**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seeling (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JUAN RAFAEL MARTEN,
*on behalf of himself and others similarly situated*,

Plaintiff,

v.

STARBUCKS CORPORATION,

Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff JUAN RAFAEL MARTEN (herein "Plaintiff MARTEN" or "Plaintiff"), individually and

on behalf of all other persons similarly situated, by his undersigned attorneys, pursuant to this

Class Action Complaint against the Defendant, STARBUCKS CORPORATION ("Defendant" or

"Starbucks"), alleges the following:

## NATURE OF THE ACTION

1.      This is a consumer protection action seeking redress for, and a stop to, Defendant's

unfair and deceptive practice of advertising and marketing its Starbucks White Chocolate

Doubleshot Energy Drink (herein the "Product"). *See* **EXHIBIT A**.

2.      The Product is advertised and sold to mislead consumers into believing that drink

contains white chocolate, when it in fact does not. *See* **EXHIBIT B**.  Accordingly, the Product

violates New York State laws with the same scope as the Federal Food Drug & Cosmetic Act ("FDCA"). Consumers are misled as to the content of the Product and the Product is misbranded.

3.   Plaintiff and Class members viewed Defendant's misleading label, and reasonably relied in substantial part on the representation that it contains real white chocolate. Plaintiff and Class members were thereby deceived into purchasing a more inferior product than they had bargained for.

4.   Upon information and belief, Defendant continues to sell the misbranded Product.

5.   Plaintiff brings this proposed consumer class action on behalf of himself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not resale.

6.   Defendant markets the Product in a way that is deceptive to consumers under consumer protection laws of New York, the other 49 states, and the District of Columbia.

7.   Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*

*12)* Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*

*13)* Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

*14)* Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

*15)* Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

*16)* Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

*17)* Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

*18)* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

*19)* Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

*20)* Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

*21)* Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

*22)* Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*23)* Michigan Consumer Protection Act, § § 445.901, *et seq.;*

*24)* Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

*25)* Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.      Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

10.      Furthermore, this court has personal jurisdiction over Defendant because its Product are advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

## PARTIES

*Plaintiff*

12.     Plaintiff MARTEN is, and at all times relevant hereto has been, a citizen of New York and a resident of New York County. On July 6, 2018, Plaintiff MARTEN purchased a 12-pack of Starbucks White Chocolate Doubleshot Energy Drink from amazon for $27.00.

13.     Plaintiff MARTEN purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff MARTEN was injured when he paid money for a beverage that did not deliver the qualities it promised and misled him as to its contents. The Product is labeled as being a "White Chocolate" Product, but in fact it contains inferior confectionary ingredients that are not white chocolate at all. He would not have been willing to pay the sum he paid had he known it was mislabeled. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving him of the benefit of his bargain and injuring him in an amount up to the purchase price. Damages can be calculated through expert testimony at trial. Further, should Plaintiff MARTEN encounter the Product in the future, he could not rely on the truthfulness of the packaging, without corrective changes to the packaging and the advertising of the Product.

*Defendant*

14.     Defendant Starbucks is a corporation organized under the laws of Washington with its headquarters at 2401 Utah Avenue S, Suite 800, Seattle, WA 98134. Defendant's agent and address for service of process is at Corporation Service Company, 300 Deschutes Way SW Ste 304, Tumwater, WA 98501.

15.     Defendant develops and markets Products throughout the United States.   The Products are available at numerous retail and online outlets.

16.     The advertising for the Product, relied upon by Plaintiff, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Product is designed to encourage consumers to purchase the Product, and misleads the reasonable consumer, i.e. Plaintiff and the Class. Defendant owns, manufactures and distributes the Product, and/or authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Product.

**FACTUAL ALLEGATIONS**
**Defendant's Product Does Not Contain Real White Chocolate**

17.     "White chocolate" signifies only one thing: a confection that contains cocoa butter, dairy ingredients, and a sweetener.[1] For more than two decades, U.S. regulations have only permitted the sale of "white chocolate" with these ingredients, including at least 20% cocoa butter by weight. For more than a decade, Canadian[2] and European[3] regulators have identically only permitted food to be called "white chocolate" if it has at least 20% cocoa butter. If a confection does not have cocoa butter, it is not white chocolate.

The FDA defines white chocolate as follows:

(a) Description. (1) White chocolate is the solid or semiplastic food prepared by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients specified in paragraph (b)(2) of this section and one or more optional nutritive carbohydrate sweeteners and may contain one or more of the other optional ingredients specified in paragraph (b) of this section. White chocolate shall be free of coloring material.

(2) White chocolate contains not less than 20 percent by weight of cacao fat . . . .

---

[1] White chocolate may also include other ingredients such flavorings or an emulsifier to hold it together. White chocolate does not include the non-fat solids of cacao beans.
[2] C.R.C., c. 870, Section B.04.009(a)(i).
[3] Directive 2000/36/EC of the European Parliament and of the Council of 23 June 2000 relating to cocoa and chocolate products intended for human consumption, Annex I, A(6).

21 CFR § 163.124.

18.    Real white chocolate's flavor is partially imparted by cocoa butter and cacao fat. The imitation white chocolate in the Product does not have cocoa butter as required, and instead has other cheap confectionary ingredients to imitate the taste of white chocolate. *See* **EXHIBIT B**.

### Federal Law Prohibits Misbranded Foods Such as Defendant's Product

19.    All Federal law, agency regulation, and state law identically prohibit Defendant's misleading labeling practices.

20.    Under the FDCA, 21 U.S.C. § 343(c), a food shall be deemed to be misbranded "[i]f it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated." The Product is misbranded regardless of whether or not Defendant intended to mislead consumers: "FDA advises that the term "misleading" does not require any clear implication regarding intent." 58 FR 64123, 64128.

### State Laws Mirror and Incorporate Federal Law and FDA Regulations

21.    Food labeling laws and regulations of the fifty states and the District of Columbia impose requirements which mirror and incorporate federal law.

22.    New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 21 U.S.C. 343. Under New York Agm. Law § 201, the law specifically provides that "[f]ood shall be deemed to be misbranded …If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof."

23.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular, and incorporates the FDCA's labeling provisions."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc*., 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (evaluating claims under New York Gen. Bus. Law §§ 349 and 350 and finding that "New York law deems any product or label that fails to conform to [New York Agm. Law] definitions 'adulterated' or 'misbranded,' and thus unlawful.").

24.     New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations of the State of New York (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 *et seq*.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10….

1 NYCRR § 259.1(a)(2).

**Defendant's Misleading Packaging Practices Would Deceive, be Material to,
and be Relied Upon By, a Reasonable Consumer**

25.    Defendant's misleading packaging practices were material to, and were relied upon,
by Plaintiff and the Class. These practices would also be material to, and be relied upon by, a
reasonable consumer, since reasonable consumers naturally attach considerable importance to the
quality of the product they believe they are receiving.

26.    FDA rules concerning white chocolate are not obscure regulations of no concern to
anyone but the regulators.  On the contrary, consumers rely on these regulations to assure that they
are purchasing what they are led to believe they are purchasing.  Since white chocolate does not
contain the cacao solids that impart chocolate with its flavor and which consumers normally
associate with chocolate, consumers rely on the FDA to assure that white chocolate more closely
resembles what they know as chocolate.

27.    Plaintiff and the Class did not know, and had no reason to know, that the Product
did not contain real white chocolate. Had Plaintiff and Class members known Defendant's Product
did not contain real white chocolate, they would not have bought the Product.

28.    Defendant's Product labeling as alleged herein is deceptive and misleading and was
designed to increase sales of the Product. Defendant's misrepresentations are part of its systematic
Product labeling and packaging practices.

**Plaintiff and the Class Were Injured as a Result of Defendant's Misrepresentations**

29.    As shown above, the presence of cocoa butter is much of what gives white
chocolate its value in the eyes of reasonable consumers.

30.    Plaintiff and Class members were thus injured when they paid the full price of the
Product and received an inferior Product than what was represented to them by Defendant.

31.     Plaintiff was thus deprived of the benefit of their bargains, injured in an amount up to the purchase price, to be determined by expert testimony at trial.

**Plaintiff Has Reason to Believe Defendant Has an Intent to Mislead**

32.     There is reason to believe that Starbucks has an intent to mislead and deceive its consumers to boost the sales of, and cut cost on, its White Chocolate Doubleshot Energy Drink Product.

33.     Defendant's other products (White Chocolate Crème Frappuccino, Iced White Chocolate Mocha, and Toasted, White Chocolate Frappuccino), actually contain cocoa butter. *See* **EXHIBIT C.** The other white chocolate products prove that the Starbucks actually knows the qualities and ingredients that make up real white chocolate.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").[4]

In the alternative, Plaintiff seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Product in New York during the applicable limitations period, and/or such

---

[4] See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and Bristol-Myers is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.");In re Chinese-Manufactured Drywall Prods. Liab. Litig., No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *52-53 (E.D. La. Nov. 28, 2017) ("it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties" and interpreting Bristol-Meyers as barring nationwide class actions where jurisdiction over defendant is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts."); Horton v. USAA Cas. Ins. Co., 266 F.R.D. 360, 364 (D. Ariz. 2009) ("Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.").

subclasses as the Court may deem appropriate ("the New York Class").

35.    The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

36.    Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

37.    This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

38.    Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

    i.   Whether Defendant labeled, packaged, marketed, advertised and/or sold the Product to Plaintiff and Class members, using false, misleading and/or deceptive packaging and labeling;

    ii.   Whether Defendant's actions constitute violations of the consumer protection laws of New York, and the other states;

    iii.   Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising and/or sale of Products;

iv.  Whether Defendant's labeling, packaging, marketing, advertising and/or selling of the Product constituted unfair, unlawful or fraudulent practices;

v.  Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

vi.  Whether the members of the Classes have sustained damages as a result of Defendant's wrongful conduct;

vii.  The appropriate measure of damages and/or other relief; and

viii.  Whether Defendant should be enjoined from continuing their unlawful practices.

39.  Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of Federal and New York state law. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

40.  Plaintiff will fairly and adequately represent and pursue the interests of the Classes. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

41.     Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Class members. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

43.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

44.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

45.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

46.    Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

47.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

48.    Plaintiff brings these claims on behalf of himself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

49.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

50.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

51.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

52.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

53.     The practices employed by Defendant, whereby it advertises, promotes, and markets its Product "White Chocolate", is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

54.     The foregoing deceptive acts and practices were directed at consumers.

55.     Defendant should be enjoined from representing the Product as "White Chocolate" on the Product labels pursuant to NY GBL § 349.

56.     Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

COUNT II

DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

(brought on behalf of the Nationwide Class, in conjunction with the substantively similar
consumer protection laws of other states and the District of Columbia to the extent New
York consumer protection laws are inapplicable to out-of-state Class members, or, in the
alternative, on behalf of the New York Class)

57.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

58.    Plaintiff brings these claims on behalf of himself and other members of the Nationwide Class for Defendant's violations of NY GBL § 349.

59.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

60.    Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

61.    Defendant's Practices described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

    a.    Defendant misrepresents or misleadingly advertises that the Product is made of "White Chocolate" with an intent to cause Plaintiff and Class members to believe that it is not an imitation product in comparison to competitors;

     b.     Defendant caused Plaintiff and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

     c.     Defendant made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

62.     The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Product as a "White Chocolate" Product is unfair, deceptive, and misleading, and in violation of NY GBL § 349.

63.     Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

64.     Defendant's actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Product as a result of and Defendant's generalized course of deception.

65.     The foregoing deceptive acts and practices are directed at consumers.

66.     The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Product. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

## COUNT III

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (FALSE ADVERTISING LAW)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

67.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

68.     Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class, for violations of NY GBL § 350.

69.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

70.     Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

71.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

72.     Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

73.    Defendant's affirmative misrepresentations or deceptions of the Product being "White Chocolate" is material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendant's material deceptions.

74.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its labeling of the Product as a "White Chocolate" Product is material and likely to deceive a reasonable consumer.

75.    Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

76.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

77.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

78.    Defendant intentionally makes materially false and misleading representations regarding the nature of the Product.

79.    Plaintiff and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Product is not made of real white chocolate. They would not have purchased the Product had they known the truth.

80.    Defendant knew and intended that Plaintiff and the Class members would rely on its misrepresentations.

81.    Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

82.    Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a.   An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.   An Order appointing the undersigned attorney as Class Counsel in this action;

c.   Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.   All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.   Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.   An order (i) requiring Defendant to immediately cease their wrongful conduct as set

forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all Class members, up to the amounts paid for the Product;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: October 8, 2018

Respectfully submitted,

By:     /s/ C.K. Lee
         C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

21

# EXHIBIT A



# EXHIBIT B

INGREDIENTS: STARBUCKS® COFFEE (WATER, COFFEE),
REDUCED-FAT MILK, SKIM MILK, SUGAR, MALTODEXTRIN,
DEXTROSE, TAURINE, NATURAL AND ARTIFICIAL FLAVORS,
CELLULOSE GEL, PANAX GINSENG ROOT EXTRACT, INOSITOL,
SODIUM ASCORBATE, GUARANA (PAULLINIA CUPANA) SEED
EXTRACT, CELLULOSE GUM, NIACINAMIDE, SUCRALOSE,
ASCORBIC ACID (VITAMIN C), TRICALCIUM PHOSPHATE,
CARRAGEENAN, PYRIDOXINE HYDROCHLORIDE (VITAMIN B6),
RIBOFLAVIN, VITAMIN A PALMITATE, VITAMIN D3.

KD   DISTRIBUTED BY NORTH AMERICAN COFFEE
PARTNERSHIP, PURCHASE, NY 10577.

# EXHIBIT C



COFFEE   TEA   MENU   COFFEEHOUSE   SOCIAL IMPACT   STARBUCKS

## White Chocolate Crème Frappuccino® Blended Crème



A smooth blend of white chocolate sa
flavor that wows.

| Grande ▼ | Whole Milk ▼ | Whipp |
|---|---|---|

**Nutrition Facts Per Serving (16 fl oz)**

| | |
|---|---|
| Calories 400 | Calories from Fat |
| | |
| Total Fat 18g | |
| Saturated Fat 11g | |
| Trans Fat 0g | |
| Cholesterol 55mg | |
| Sodium 280mg | |
| Total Carbohydrate 56g | |
| Dietary Fiber 0g | |
| Sugars 55g | |
| Protein 6g | |
| Caffeine 0mg** | |

*Percent Daily Values are based on a 2,000 calorie diet.

**Each caffeine value is an approximate value.

**Ingredients**

Ice, Milk, Crème Frappuccino Syrup [Water, Sugar, Salt, Natural And Artificial Flavours, Xanthan Gum, Potassium Sorbate, Citric Acid], Whipped Cream [Cream (Cream, Milk, Mono And Diglycerides, Carrageenan), Vanilla Syrup (Sugar, Water, Natural Flavors, Potassium Sorbate, Citric Acid)], White Chocolate Mocha Sauce [Sugar, Condensed Skim Milk, Coconut Oil, Cocoa Butter, Natural Flavor, Salt, Potassium Sorbate, Monoglycerides].

7

 COFFEE    TEA    MENU    COFFEEHOUSE    SOCIAL IMPACT    STARBUCKS

## Iced White Chocolate Mocha



Our signature espresso meets white cl
sweetened whipped cream in this whit

| Grande ▼ | 2% Milk ▼ | Whippe |
|---|---|---|

**Nutrition Facts Per Serving (16 fl oz)**

| Calories 420 | Calories from Fat 1 |
|---|---|

%|

**Total Fat** 20g

   Saturated Fat 13g

   Trans Fat 0.5g

**Cholesterol** 60mg

**Sodium** 200mg

**Total Carbohydrate** 50g

   Dietary Fiber 0g

   Sugars 49g

**Protein** 11g

Caffeine 150mg**

*Percent Daily Values are based on a 2,000 calorie diet.

**Each caffeine value is an approximate value.

**Ingredients**

**Ice, Milk, White Chocolate Mocha Sauce** [Sugar, Condensed Skim Milk, Coconut Oil, Cocoa Butter, Natural Flavor, Salt, Potassium Sorbate, Monoglycerides], **Brewed Espresso, Whipped Cream** [Cream (Cream, Milk, Mono And Diglycerides, Carrageenan), Vanilla Syrup (Sugar, Water, Natural Flavors, Potassium Sorbate, Citric Acid)].

8



COFFEE   TEA   MENU   COFFEEHOUSE   SOCIAL IMPACT   STARBUCKS

# Toasted White Chocolate Frappuccino®



Our rich espresso, milk and flavors of c
topped with whipped cream and candi
here, then gone.

| Grande ▼ | Whole Milk ▼ | Whippe |

**Nutrition Facts Per Serving (16 fl oz)**

| | |
|---|---|
| Calories 440 | Calories from Fat 1 |
| | %D |
| **Total Fat** 15g | |
| Saturated Fat 9g | |
| Trans Fat 0g | |
| **Cholesterol** 45mg | |
| **Sodium** 330mg | |
| **Total Carbohydrate** 71g | |
| Dietary Fiber 0g | |
| Sugars 69g | |
| **Protein** 5g | |
| Caffeine 95mg** | |

*Percent Daily Values are based on a 2,000 calorie diet.

**Each caffeine value is an approximate value.

**Ingredients**

**Ice, Milk, Coffee Frappuccino Syrup** [Sugar, Water, Salt, Natural And Artificial Flavors, Xanthan Gum, Potassium Sorbate, Citric Acid], **Coffee, Whipped Cream** [Cream (Cream, Mono And Diglycerides, Carageenan), Vanilla Syrup (Sugar, Water, Natural Flavors, Potassium Sorbate, Citric Acid)], **Toasted White Chocolate Mocha Sauce** [Sugar, Condensed Skim Milk, Corn Syrup, Water, Cocoa Butter, Natural Flavors, Salt, Gum Arabic, Monoglycerides, Xanthan Gum, Potassium Sorbate], **Candied Cranberry Topping** [Sugar, Cranberries, Sodium Citrate].

9