**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

JUAN RAFAEL MARTEN, *on behalf of*
*himself and others similarly situated*,

              Case No. 1:18-cv-09201-JGK

          Plaintiff

        v.

STARBUCKS CORPORATION,

            Defendant.

-------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AND MOTION TO STRIKE**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………………..ii

INTRODUCTION ………………………………………………………………………1

ARGUMENT ……………………………………………………………………………2

   I.     THE PRODUCT IS AN IMITATION  …………………………………………2

   II.    A REASONABLE CONSUMER WOULD BE DECEIVED
        BY THE PRODUCT LABEL  ……………………………………………………3

   III.   PLAINTIFF PLEADS FRAUD WITH PARTICULARITY…………………….8

   IV.   PLAINTIFF PLEADS INJURY ………………………………………………10

   V.    PLAINTIFF'S FRAUD CLAIM IS NOT BARRED BY
        ECONOMIC LOSS RULE ……………………………………………………11

   VI.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF…………..12

   VII.  PLAINTIFF'S CLAIMS ARE NOT PREEMPTED …………………………..14

   VIII. THE PRIMARY JURISIDCTION DOCTRINE
        IS INAPPLICABLE……………………………………………………………14

   IX.   THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT
        WITH RESPECT TO THE NATIONWIDE CLASS …………………………17

   X.    THE COURT CAN APPLY OTHER STATES' LAWS TO
        NON-NEW YORK CLASS MEMBERS ……………………………………..20

CONCLUSION………………………………………………………………..…………21

i

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
   2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866 (E.D.N.Y. July 17, 2013) ...................... 13

*Ackerman v. Coca-Cola Co.*,
   No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010).... 4, 15

*AM Tr. v. UBS AG*,
   78 F. Supp. 3d 977 (N.D. Cal. 2015) ...................................................................................... 17

*Ambriz v. Coca Cola Co.*,
   13-cv-03539, 2014 U.S. Dist. LEXIS 9870 (N.D. Cal. Jan. 27, 2014) .................................... 17

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................................ 2

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015)................................................................................................... 16

*Beach v. Citigroup Alt. Invs. LLC*,
   2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014).......................................................... 17

*Belfiore v. Procter & Gamble Co.*,
   F. Supp. 3d 440 (E.D.N.Y. 2014).......................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 2

*Blessing v. Sirius XM Radio Inc.*,
   756 F. Supp. 2d 445 (S.D.N.Y. 2010) .................................................................................... 21

*Bocre Leasing Corp. v. Gen. Motors Corp.*,
   840 F. Supp. 231 (E.D.N.Y. 1994)......................................................................................... 12

*Brumfield v. Trader Joe's Co.*,
   2018 U.S. Dist. LEXIS 148397 (S.D.N.Y. Aug. 30, 2018) ...................................................... 7

*Clark-Fitzpatrick v. Long Island R.R. Co.*,
   70 N.Y.2d 382 (N.Y. 1987)................................................................................................... 11

*Day v. Air Methods Corp.*,
   17-cv-183, 2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct. 23, 2017)..................................... 18

*Delgado v. Ocwen Loan Servicing Company, LLC*,
   2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014)...................... 12

*Delgado v. Ocwen Loan Servicing, LLC*,
   No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758 (E.D.N.Y. Sep. 23, 2014) ... 3

*Ebin v. Kangadis Food Inc.,*
  2013 U.S. Dist. LEXIS 174174, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013)...................... 11

*Ellis v. Tribune TV Co.,*
  443 F.3d 71 (2d Cir. 2006) .................................................................................................... 15

*F.T.C. v. Cyberspace.com LLC,*
  453 F.3d 1196 (9th Cir. 2006).................................................................................................. 3

*Famous Horse Inc. v. 5th Ave. Photo Inc.,*
  624 F.3d 106 (2d Cir. 2010) .................................................................................................... 2

*Feller v. Transamerica Life Ins. Co.,*
  16-cv-01378, 2017 U.S. Dist. LEXIS 206822 (C.D. Cal. Dec. 11, 2017) .............................. 18

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.,*
  No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, (N.D. Cal. Sep. 22, 2017) ................. 18

*Gant v. Wallingford Bd. of Educ.,*
  69 F.3d 669 (2d Cir. 1995)....................................................................................................... 1

*Goldemberg v. Johnson & Johnson Consumer Cos.,*
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................................... 4

*Hanley v. Chicago Title Ins. Co.,*
  No. 12- 4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013)..................................................... 2

*Hanson v. Denckla,*
  357 U. S. 235 (1958) .............................................................................................................. 19

*Horton v. USAA Cas. Ins. Co.,*
   266 F.R.D. 360 (D. Ariz. 2009) .............................................................................................. 17

*Hughes v. Ester C Co.,*
  930 F. Supp. 2d 439 (E.D.N.Y. 2013)...................................................................................... 3

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.,*
  No. 09-2047, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 28, 2017),...........................18, 19

*In re Grand Theft Auto Video Game Consumer Litig.,*
  06 MD 1739, 2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. Oct. 25, 2006) .................................. 21

*In re Kind LLC "Healthy & All Nat." Litig.,*
  209 F. Supp. 3d 689 (S.D.N.Y. 2016)..................................................................................... 16

*Jessani v. Monini N. Am., Inc.,*
  No. 17-2504-cv, 2018 U.S. App. LEXIS 33791 (2d Cir. Dec. 3, 2018) .................................... 8

*Kaatz v. Hyland's Inc.,*
  No. 16 CV 237, 2016 U.S. Dist. LEXIS 87348 (S.D.N.Y. July 5, 2016) ................................ 21

*Kacocha v. Nestle Purina Petcare Co.,*
  No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. Aug. 11, 2016) ........... 10

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013) ................................................................. 11

*Koehler v. Litehouse, Inc.*,
   2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ..................... 13

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014) ............................................................. 4, 11

*Langan v. Johnson & Johnson Consumer Cos.*,
   897 F.3d 88 (2d Cir. 2018) ..................................................................... 20

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal.App.4th 115 (Cal. Ct. App. 2007) ........................................................ 4

*Lonner v. Simon Prop. Grp., Inc.*,
   866 N.Y.S.2d 239 (App. Div 2008.) .............................................................. 3

*Lyons v. Litton Loan Servicing LP*,
   158 F. Supp. 3d 211 (S.D.N.Y. 2016) ........................................................... 21

*MBIA Ins. Co. v. GMAC Mortg. LLC*,
   914 N.Y.S.2d 604 (Sup. Ct. 2010) ............................................................... 9

*McKinniss v. Sunny Delight Bevs. Co.*,
   No. CV 07-02034, 2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sep. 4, 2007) .......................... 6

*Orlando v. Novurania of Am., Inc.*,
   162 F. Supp. 2d 220 (S.D.N.Y. 2001) ........................................................... 11

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013) ............................................................ 4

*Raines v. Byrd*,
   521 U.S. 811 (1997) ........................................................................... 13

*Reid v. GMC Skin Care USA Inc.*,
   No. 8:15-CV-277, 2016 U.S. Dist. LEXIS 14001 (N.D.N.Y. Jan. 15, 2016) .......................... 21

*Segedie v. Hain Celestial Grp., Inc.*,
   No. 14-cv-5029, 2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015) ............................. 15

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ..................................................................... 9

*Singleton v. Fifth Generation, Inc.*,
   2016 U.S. Dist. LEXIS 14000, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) .......................... 10

*Sloan v. GM, LLC*,
   16-cv-07244, 2018 U.S. Dist. LEXIS 21176 (N.D. Cal. Feb. 7, 2018) .............................. 19

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) ............... 3

*United States v. 62 Cases, More or Less, Containing Six Jars of Jam*,
    183 F.2d 1014 (10th Cir. 1950) ........................................................................ 3

*United States v. El-O-Pathic Pharmacy*,
    192 F.2d 62 (9th Cir. 1951) ............................................................................... 6

*Weisman v. LeLandais*,
    532 F.2d 308 (2d Cir. 1976) .............................................................................. 1

*Wilson v. Amoco Corp.*,
    989 F. Supp. 1159 (D. Wyo. 1998) ................................................................. 16

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) .............................................................. 2

## Statutes

NY GBL § 349 ........................................................................................................ 3

## Rules

F.R.C.P. 9(b) ........................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1

## Regulations

21 C.F.R. § 101.22(i)(1)(i) .............................................................................. 6, 14

## INTRODUCTION

Plaintiff Juan Rafael Marten ("Plaintiff Marten" or "Plaintiff") hereby respectfully submits this Opposition to Defendant Starbucks Corporation's ("Starbucks" or "Defendant") Motion to Dismiss and Motion to Strike.  On October 8, 2018, Plaintiff brought a Class Action Complaint ("Complaint") seeking redress for the unfair and deceptive business practices whereby Defendant markets and labels its Starbucks White Chocolate Doubleshot Energy coffee drink (the "Product"). On December 19, 2019, Defendant served its Motion to Dismiss and Motion to Strike ("Def. Mem.") on Plaintiff, which Plaintiff here opposes.

In reliance on Defendant's misrepresentation that the Product contains white chocolate, Plaintiff purchased a 12-pack of the Product from Amazon.com for $27.00.  The Product does not contain white chocolate, however, but only cheap confectionary ingredients that mimic its taste.  As alleged in the Complaint, white chocolate necessarily includes cocoa butter, which the Product lacks.   As a result of Defendant's misrepresentation, Plaintiff Martin was injured when he paid money for a beverage that did not deliver the qualities it promised and misled him as to its contents. He would not have been willing to pay the sum he paid had he known the Product was mislabeled. Defendant delivered a beverage with significantly less value than was warranted by its representations, thereby depriving him of the benefit of his bargain and injuring him in an amount up to the purchase price.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'"  *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).  A court

"must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.,* No. 12- 4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010)). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)). Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id*. at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1937. Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548.

## ARGUMENT

### I. THE PRODUCT IS AN IMITATION

According to federal regulations, a food is an imitation "if it is a substitute for and resembles another food but is nutritionally inferior to that food." 21 C.F.R. §101.3(e)(1). And Defendant argues that the Product cannot qualify as imitation white chocolate because "it is a coffee based drink with natural and artificial white chocolate flavors." Def. Mem., pg. 4. The Product, says Defendant "does not have the appearance of, nor is it used in the place of or as a substitute for, white chocolate." Def., Mem., pg. 4. This is a red herring, however. Obviously, no one is going to mistake the Product for a solid bar or tablet of white chocolate. But reasonable consumers will mistake it for a coffee drink containing actual white chocolate. As the Complaint

alleges, these do exist and are in fact produced by Defendant itself.  *See* Complaint ¶ 33, Exhibit C.  And reasonable consumers do see canned or bottled Starbucks products as substitutes for the hand-crafted ones available in Starbucks stores, as it is these that give the Product its familiarity for consumers.  Contrary to Defendant's assertion, the Product does qualify as an imitation by the standards articulated in *United States v. 62 Cases, More or Less, Containing Six Jars of Jam*, 183 F.2d 1014, 1016 (10th Cir. 1950), *rev'd*, *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 71 S. Ct. 515, 517-18, 519-20 (1951)

## II.   A REASONABLE CONSUMER WOULD BE DECEIVED BY THE PRODUCT LABEL

Defendant argues that its supposed disclaimer, "NATURALLY & ARTIFICIALLY FLAVORED," negates any impression that the Product contains actual white chocolate.  However, courts around the country are agreed that whether a reasonable consumer is likely to be misled is an issue of fact that is inappropriate for decision on a motion to dismiss.  This is particularly so when the issue surrounds the effect of disclaimers or disclosures on the reasonable consumer.  Here is a small sampling of these decisions:

- *Stoltz v. Fage Dairy Processing Indus., S.A*., No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement.")

- *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758, at *24 (E.D.N.Y. Sep. 23, 2014) ("[a] solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures.") (quoting *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006))

- *Hughes v. Ester C Co*., 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) (a disclaimer stating the product is not intended to treat any disease does not eliminate "the possibility of a reasonable consumer being misled.")

- *Lonner v. Simon Prop. Grp., Inc*., 866 N.Y.S.2d 239, 247 (App. Div 2008.) (the complaint stated a cause of action under NY GBL § 349 because "it alleges that the inadequate font size in which the

dormancy fee provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice.")

- *Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) (rejecting defendant's argument that "it is unreasonable to assume each Aveeno product contains exclusively natural ingredients when its labeling affirmatively identifies its one or two natural ingredients as well as the synthetic ingredients.")

- *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("Because it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled about the fat content of Smart Balance based upon its packaging, the Court DENIES Defendants' motion to dismiss on this basis.")

- *Quinn v. Walgreen Co*., 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact.")

- *Linear Tech. Corp. v. Applied Materials, Inc*., 152 Cal.App.4th 115, 134–35 (Cal. Ct. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.")

Defendant argues that "when a product's ingredient list does not include the food at issue and the product's label describes it only as 'flavored,' courts have found that the product would not confuse reasonable consumer acting reasonably."  Def. Mem., pg. 6. But there is no such categorical rule.  And courts routinely find that accurate ingredient statements do not cure deceptive label representations on the front of the packaging.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing.")

In this case, reasonable consumers are most likely to interpret the Product label's "NATURALLY & ARTIFICIALLY FLAVORED," *not* as qualifying "WHITE CHOCOLATE" so as to indicate that it is merely a flavor and not an ingredient, but as an independent statement about the Product's general qualities.  Since this independent statement will not qualify the meaning of "WHITE CHOCOLATE" in any way, reasonable consumers will interpret the latter as indicating that the Product contains actual white chocolate.

This interpretation is encouraged by Defendant's decision to print its "NATURALLY & ARTIFICALLY FLAVORED" representations in substantially smaller font than its "WHITE CHOCOLATE" representations, which would not be appropriate if both formed part of a unitary statement communicating that the "WHITE CHOCOLATE" in question denoted flavoring alone. Moreover, a normal speaker of English would find it much more natural to speak of a "NATURAL & ARTIFICIAL WHITE CHOCOLATE FLAVOR" rather than a "WHITE CHOCOLATE… NATURALLY & ARTIFICALLY FLAVORED," which is ungrammatical and therefore would not be reasonably interpreted as a single statement about the nature and origins of the white chocolate flavoring."  Defendant's manipulative syntax and contrasting font sizes both exist to *distract* the reasonable consumer from discerning a semantic relationship between "WHITE CHOCOLATE" and "NATURALLY & ARTIFICALLY FLAVORED," which is why Defendant eagerly departs from normal linguistic conventions.  If the purpose of the labeling was to indicate the presence of white chocolate flavoring, then normal usage would be to place "NATURAL & ARTIFICIAL" before "WHITE CHOCOLATE" so as not to disrupt the connection between "WHITE CHOCOLATE" and "FLAVORED."

Defendant argues that the non-misleading nature of its representations is evidenced by its compliance with 21 C.F.R. § 101.22(i)(1)-(2).   But close attention to the actual texts of these regulations reveal otherwise.   21 C.F.R. § 101.22(i)(1)(i) reads:

> If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be <u>immediately preceded</u> by the word "natural" and shall be <u>immediately followed</u> by the word <u>"flavored"</u> in letters <u>not less than one-half the height</u> of the letters in the name of the characterizing flavor, e.g., "<u>natural strawberry flavored shortcake</u>," or "strawberry flavored shortcake." (emphases added)

The actual strictures of 21 C.F.R. § 101.22(i)(1)(i) are in place precisely in order to prevent the calculatingly manipulative and misleading syntax that Defendant opts for.   Contrary to the above directive, it is the characterizing flavor of the Products that immediately precedes the word "natural," *not* the other way around as demanded by federal regulation.   Defendant's "NATURALLY & ARTIFICIALLY FLAVORED" is also *less* than half than one-half the size of "WHITE CHOCOLATE," thus violating the requirements of both 21 C.F.R. § 101.22(i)(1) and 21 C.F.R. § 101.22(i)(2).   *See* Compl., Exhibit A.

FDA regulations are not capricious bureaucratic meddling, but rules designed to mirror the actual linguistic practices and cognitive processing of reasonable consumers, which Defendant's label is calculated to mislead.   *See McKinniss v. Sunny Delight Bevs. Co.*, No. CV 07-02034, 2007 U.S. Dist. LEXIS 96108, at *8 (C.D. Cal. Sep. 4, 2007) ("a reasonable consumer may be unwary or trusting"); *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951) (the term "misleading" is judged by reference to the reasonable consumer who "when making a purchase, do[es] not stop to analyze").   The syntax and typeset of the label are ultimately just calculating sleights-of-hands crafted to sow financially lucrative consumer confusion while giving Defendant a patina of plausible deniability ahead of litigation such as the instant action.

There have, of course, been a few exceptions to the general rule that deceptiveness to a reasonable consumer may not be adjudicated on a motion to dismiss, and Defendant cites two of these. Yet these examples only underscore Plaintiff's argument above. In *Brumfield v. Trader Joe's Co.*, the court dismissed the complaint because:

> The label on the Product's front clearly states that the product is "Black Truffle Flavored." The word "Flavored" is in large lettering underneath the words "Black Truffle." All that label would suggest to a "reasonable consumer acting reasonably" is that the product is designed to taste like black truffles, which, according to the Complaint, it does.

*Brumfield v. Trader Joe's Co.*, 2018 U.S. Dist. LEXIS 148397, at *5-6 (S.D.N.Y. Aug. 30, 2018)

The defendant's disclosure here was syntactically natural. Since "Flavored" immediately followed "Black Truffle," reasonable consumers could have no difficulty understanding that the former was there to qualify the latter as a characterizing flavor and not as an ingredient. The *Brumfield* court in fact placed considerable emphasis on the precise nature of the defendant's phrasing. *See id.* at 7-8 ("Obviously, one way for Trader Joe's to ensure that their 'X-flavored' products taste like 'X' is to include actual 'X' in the product; however, reasonable consumers are not so naïve as to believe that including actual 'X' in the product is the only way to make the product 'X flavored.'")

All this also holds true of Defendant's other citation, *Jessani v. Monini N. Am., Inc.*, where the product was labeled "Truffle Flavored," *id.* at 1, and not "Truffle…Naturally and Artificially Flavored." Further, the Court of Appeals made it perfectly clear that its decision to uphold the district court ruling rested on the distinctive qualities of truffles, which militated against consumer deception:

> According to plaintiffs, truffles are the most expensive food in the world… Moreover, real truffles are highly perishable (a real truffle begins "to lose its flavor as soon as it is pulled from the ground"), "seasonal," and "impossible to mass produce." *Id.* at 12. In this context, representations that otherwise might be ambiguous and misleading are not: it is simply not plausible that a significant portion of the general consuming public acting reasonably would conclude that Monini's mass produced, modestly-priced olive oil was made with "the most

expensive food in the world." *Id.* This is particularly so given that the product's ingredient list contains no reference to the word "truffle" and the primary label describes the product only as being "Truffle Flavored." Accordingly, plaintiffs' state law consumer protection claims fail.

*Jessani v. Monini N. Am., Inc.*, No. 17-2504-cv, 2018 U.S. App. LEXIS 33791, at *2-3 (2d Cir. Dec. 3, 2018)

Analogous claims cannot be made of white chocolate, which is not seasonal, is mass produced, and is very far from "the most expensive food in the world."  Since it was these factors that rendered representations "that otherwise might be ambiguous and misleading" non-deceptive, this case only supports Plaintiff's argument.

### III.   PLAINTIFF PLEADS FRAUD WITH PARTICULARITY

Defendant argues that Plaintiff fails to satisfy F.R.C.P. 9(b)'s heightened pleading requirements because he "has not plausibly alleged that Defendant made a materially false statement, nor has he shown that Defendant intended that consumers would rely on an allegedly false statement, and has thus failed to satisfy Rule 9(b)'s heightened pleading requirement."  Def. Mem., pg. 7.  These arguments are meritless.

As to the deceptiveness of Defendant's statements, Defendant argues that "despite Plaintiff's repeated protestations that reasonable consumers would believe that the Product contained 'real' white chocolate, the Product's label makes no reference to 'real' white chocolate." Def. Mem., pg. 7.  This argument is frivolous, however, given that the default for reasonable consumers is to assume that products are what they purport to be in the absence of good indication to the contrary.  Defendant's liability arises from its failure to adequately disclose that its "white chocolate" is *not* real, which is not cured by the fact that the Product was not expressly promoted as "real."

Defendant rejects Plaintiff's argument that its intent to deceive may be inferred from the existence of its other white chocolate coffee products (with actual white chocolate) because "the products identified in Exhibit C are handcrafted beverages, not pre-packaged products subject to the FDA's labeling requirements, making Plaintiff's comparison irrelevant." Def. Mem., pg. 8. This difference does not undermine Plaintiff's basic point, however, which is that Defendant knew what white chocolate is (and is not) and that its deception was intentional.   A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).   And the discrepancy between these different "white chocolate" products provides this strong circumstantial evidence.

Defendant also argues that "the ingredient information, published to promote transparency, is hardly the action of a company intent on deceiving its customers." Def. Mem., pg. 8.  But given that reasonable consumers rely on front label representations much more frequently than back label ingredient statements, the inclusion of an accurate ingredients statement is the action of a company intent on deceiving its customers while retaining a patina of plausible deniability in the event of litigation such as the instant action.

As to Plaintiff's reliance on Defendant's misrepresentation, this is a factual question to be reserved for a trier of fact, not adjudicated on a motion to dismiss, just like the question of deceptiveness to a reasonable consumer. *See MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 608 (Sup. Ct. 2010) ("Reasonable reliance is a fact-intensive inquiry, which should be reserved for a trier of fact.").

## IV.   PLAINTIFF PLEADS INJURY

Defendant argues that Plaintiff fails to satisfactorily allege injury because he ultimately "asserts a statutory violation," which "does not rise to the level of a concrete or particularized harm."   Def. Mem., pg. 9.   This is a brazen mischaracterization of Plaintiff's actual injury allegations, which read as follows:

> As a result of Defendant's deceptive conduct as alleged herein, Plaintiff MARTEN was injured when he paid money for a beverage that did not deliver the qualities it promised and misled him as to its contents. The Product is labeled as being a "White Chocolate" Product, but in fact it contains inferior confectionary ingredients that are not white chocolate at all. He would not have been willing to pay the sum he paid had he known it was mislabeled. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving him of the benefit of his bargain and injuring him in an amount up to the purchase price.

Compl. ¶ 13.

The plausibility of these allegations in no way turns on whether Defendant has committed a statutory violation.   Whether or not the Product can be fairly classified as an "imitation" of another good, Plaintiff was misled into believing it contained white chocolate. This is the source of the injury given that "the presence of cocoa butter is much of what gives white chocolate its value in the eyes of reasonable consumers." Compl. ¶ 29.

Plaintiff's injury allegations are pleaded consistently with New York law and similarly to other complaints that have survived motions to dismiss in New York courts.   *See Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' (Compl. ¶ 9.) Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Singleton v. Fifth Generation, Inc*., 2016 U.S. Dist. LEXIS 14000, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged

that, had he "known 'the truth,'" he "would not have bought the vodka, or would have paid less for it."). See also *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014); *Ebin v. Kangadis Food Inc*., 2013 U.S. Dist. LEXIS 174174, 2013 WL 6504547, at *12 (S.D.N.Y. Dec. 11, 2013)

## V.   PLAINTIFF'S FRAUD CLAIM IS NOT BARRED BY ECONOMIC LOSS RULE

Defendant argues that "[t]he economic loss rule bars Plaintiff's fraud claim" because this claim "is based solely on an alleged economic injury," Def. Mem., pg. 10, and that this economic injury consists in "nothing more than the benefit of his contractual bargain." Def. Mem., pg. 11. However, Defendant's argument conveniently ignores that the economic loss doctrine applies only where a contract actually exists between a plaintiff and a defendant.  As Defendant's own citation clarifies, a "simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick v. Long Island R.R. Co*., 70 N.Y.2d 382, 389 (N.Y. 1987).  But no privity was established between the two parties to this action when Plaintiff purchased the Product through Amazon.com.  Since there was no contract, there was no breach thereof, and the economic loss doctrine is simply inapplicable.

Defendant's citations to case law are not to the contrary.  In *Orlando v. Novurania of Am., Inc.*, the $20,000 loss pleaded was "the value of the boat *under the contract*." *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 226 (S.D.N.Y. 2001) (emphasis added).   In *Kalimantano GmbH v. Motion in Time, Inc.*, Plaintiffs sought "the return of the moneys [they] paid under their *oral agreements* to purchase watches."  *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 417 (S.D.N.Y. 2013) (emphasis added).

Defendant cites *Bocre Leasing Corp. v. Gen. Motors Corp.* for the its contention that "the economic loss doctrine does not require privity of contract between plaintiff and defendant." Def. Mem., pg. 10. But *Bocre Leasing Corp.* does not stand for so broad a proposition. Since the plaintiff purchased the defective helicopter for which it sought damages from a used aircraft broker, the court found that the plaintiff was "once removed from the transaction." *Bocre Leasing Corp. v. Gen. Motors Corp.*, 840 F. Supp. 231, 234 (E.D.N.Y. 1994). However, the court held the economic loss doctrine to be applicable only because "Plaintiff could have… bargained for warranties and in the event of a breach, could have sued Edwards under the contract." *Id*. In the instant action, however, Plaintiff was clearly in no position to negotiate warranties with either Amazon.com or Defendant. Defendant does not cite a single instance of a common law fraud claim being barred by the economic loss doctrine in the context of a normal consumer fraud class action like this one.

## VI.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because there is no indication that she intends to purchase any of the Products again, and is therefore unlikely to suffer any future injury. Def. Mem., pgs. 11-12. However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F. Supp. 3d 440, 445 (E.D.N.Y. 2014). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id*. *See Delgado v. Ocwen Loan Servicing Company, LLC*, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would

12

eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at \*56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at \*6 (N.D. Cal. Dec. 13, 2012)).

Some have argued that the policy considerations behind state consumer protection laws must yield to the Constitution. But there is no conflict between the two. The Supreme Court has held that "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This formulation thus presupposes that the proper party *exists*: The reference is to *the* proper party, whomever that happens to be, not to *a* proper party, who might or might not exist. And this is consistent with the reasoning of courts that have held injunctive relief to be appropriate in consumer fraud class actions: Given the specific conundrum intrinsic to these cases—that anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again—the usual application of the standing rule must be adjusted accordingly if there is ever to be a proper party, which the *Raines* formulation indicates there must be. In these cases, the proper party to request injunctive relief is the party that already has standing to request other forms of relief arising out of the same case or controversy. This is the *best conceivable* party given the very nature of the cause of action and the public interest. Article III does not require more than this. The alternative is a state of affairs in which those who need and are entitled to injunctive relief are epistemologically unable to act on that right while those

who have the knowledge to do so are for this very reason legally disqualified from doing so.

### VII.  PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

Defendant's argument that Plaintiff's state law consumer protection claims are preempted by FDA regulations might be appropriate if Defendant's labeling was in compliance with these regulations.  But as argued in Section II, they are not.  21 C.F.R. § 101.22(i)(1)(i) requires that the characterizing flavor be "immediately preceded by the word 'natural'" and be "immediately followed by the word 'flavored.'"  This does not describe Defendant's actual labeling practices, however, as explained above, since "naturally" follows rather than precedes the characterizing flavor, in consequence of which the characterizing flavor is not immediately followed by "flavored," as also required by regulation.

Defendant's supposed disclaimer "NATURALLY & ARTIFICIALLY FLAVORED," also violates both 21 C.F.R. § 101.22(i)(1) and 21 C.F.R. § 101.22(i)(2) because its font size is less than half that of "WHITE CHOCOLATE," as is clear from Compl., Exhibit A.  While Defendant is correct that federal regulations authorize business to denote certain representations are referring only to characterizing flavors, Defendant does not do so in the manner prescribed.  Accordingly, Defendant cannot now claim these regulations as a safe harbor against this consumer fraud action.

### VIII. THE PRIMARY JURISIDCTION DOCTRINE IS INAPPLICABLE

Defendant argues that this action should be dismissed pursuant to the primary jurisdiction doctrine because "[w]hile courts may decide whether labeling is false or misleading, they ***may not*** rule in such a manner that would undermine the FDA's considered judgments." Def. Mem., pg. 16 (emphasis in original).  However, Defendant does not explain which of FDA's "considered judgments" the court would be undermining by adjudicating this case.  As explained above,

Defendant's labeling is not in compliance with FDA requirements, so the judgments in question cannot refer to these. Nor does Defendant suggest that the FDA has issued a judgment on the Product specifically or has an intent to do so at any point in the foreseeable future.

As Defendant correctly observes, the Second Circuit has promulgated a four-factor test to determine when the doctrine is applicable. These factors are: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Ellis v. Tribune TV Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006). Contrary to Defendant, however, these factors all argue against dismissal pursuant to the doctrine of primary jurisdiction.

As to factor (1), whether reasonable consumers are likely to be deceived by a product label is most certainly "within the conventional experience of judges." *See Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 U.S. Dist. LEXIS 60739, at *35 (S.D.N.Y. May 7, 2015) ("[T]he issues here are "within the traditional realm of judicial competence") (quotations and citations omitted); *Ackerman*, No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *54 (E.D.N.Y. July 21, 2010) ("The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine").

Defendant has not identified any special technical questions in this case that the court might be ill-equipped to handle. Even in cases where the issue has been scientific or technical, this alone does not create a presumption in favor of primary jurisdiction. *See In re Kind LLC "Healthy & All*

*Nat." Litig.*, 209 F. Supp. 3d 689, 695 (S.D.N.Y. 2016);  *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1170 (D. Wyo. 1998).

Factor (2) is also inapplicable.  While the FDA is charged with policing deceptive labeling, this is not "particularly" within its discretion.  Such may be the practice in some other countries, but it is well accepted in the United States that consumer fraud class actions play an important role in regulating business misconduct.  Defendant's argument simply proves too much, since it could be made in just about any food-based consumer fraud lawsuit, and it would follow that all such lawsuits must be dismissed under primary jurisdiction doctrine.  By the same token, most non-food-based consumer fraud lawsuits would also have to be dismissed, pursuant to the regulatory authority of the FTC or other bodies.

Factor (3), the risk of inconsistent rulings, is also irrelevant.  Defendant has not indicated that it is being sued elsewhere by another party on similar claims, such that inconsistent rulings might arise.  Even if this were the case, the proper recourse might be to consolidate the cases before a single court, not to dismiss them.  In any event, court rulings in consumer fraud cases will always be "inconsistent," even as regards facially similar claims, given that the total factual contexts of facially similar representations will always vary to some extent.  So, consistency is simply an inappropriate ideal in this context.

As to factor (4), Defendant has not made either the Court or Plaintiff of any prior application to the FDA on the questions implicated in this case.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) ("Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation.")

## IX.   THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT WITH RESPECT TO THE NATIONWIDE CLASS

Citing the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), Defendant argues that the Court lacks personal jurisdiction over the claims of unnamed, out-of-state members of the nationwide class.  *See* Def. Mem., pgs. 17-19.  Defendant interprets this decision as eliminating a federal court's jurisdiction over nationwide classes wherever the court exercises only specific jurisdiction over the named plaintiff's claims and could not have exercised specific jurisdiction over the claims of unnamed out-of-state class members had they brought their claims their claims in their individual capacity rather than as class members.  In other words, Defendant argues that the fact that these claims form part of a class action is irrelevant to the Court's jurisdictional analysis.  *See* Def. Mem., pgs. 4-9.

*Bristol-Myers* never stated so much, however, and personal jurisdiction in class actions has never been understood in this way historically.  *See Beach v. Citigroup Alt. Invs. LLC*, 2014 U.S. Dist. LEXIS 30032, at *16-17 (S.D.N.Y. Mar. 7, 2014) ("In an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action."); *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015) ("However, claims of unnamed class members are irrelevant to the question of specific jurisdiction."); *Famular v. Whirlpool Corp.*, No. 16 CV 944, 2017 U.S. Dist. LEXIS 8265, at *7 (S.D.N.Y. Jan. 19, 2017); *Ambriz v. Coca Cola Co.*, 13-cv-03539, 2014 U.S. Dist. LEXIS 9870, at *18 (N.D. Cal. Jan. 27, 2014); *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 364 (D. Ariz. 2009)

The *Bristol-Myers* Court noted that its decision was governed by "settled principles regarding specific jurisdiction."  *Bristol-Myers*, 137 S. Ct. at 1781.  And in line with this, many courts have rejected the notion that the decision overturns these longstanding understandings of

17

personal jurisdiction in class actions. *See Day v. Air Methods Corp.*, 17-cv-183, 2017 U.S. Dist. LEXIS 174693, at *5-6 (E.D. Ky. Oct. 23, 2017) ("AMC contends that this Court does not have personal jurisdiction over it regarding all claims brought in a representative capacity of similarly-situated employees employed by the defendant outside of Kentucky. This argument is misplaced because the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members."); *Feller v. Transamerica Life Ins. Co.*, 16-cv-01378, 2017 U.S. Dist. LEXIS 206822, at *47-48 (C.D. Cal. Dec. 11, 2017) ("The Supreme Court in <u>BMS</u> applied its reasoning to the narrower grounds of personal jurisdiction in the context of mass tort actions. Its reasoning does not reach so far as to bar the nonresident unnamed class members.").

These decisions have often emphasized that *Bristol-Myers* concerned a *mass* action rather than a *class* action. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and *Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.").  Citing Supreme Court precedent, *Fitzhenry-Russell* observed that it did not follow from the fact that unnamed class members are parties to an action for certain purposes that they are parties for every purpose (such as determining jurisdiction).  *See Id.*.

Another District Court agreed that *Bristol-Myers* "says nothing about federal jurisdiction in class actions." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *53 (E.D. La. Nov. 28, 2017). The District Court in *Chinese-Manufactured Drywall* based its decision on the fact that "it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass

nonresident parties." *Id*. at *52-53.  The suggestion that *Bristol-Myers* bars nationwide class actions where jurisdiction over a named plaintiff is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts." *Id*.

Courts have also stressed that *Bristol-Myers* involved an action in *state* court and as such implicated concerns that do not apply when a class action lawsuit is brought in federal court.  The decision in *Bristol-Myers* was based largely on the "territorial limitations on the power of the respective states." *Bristol-Myers*, 137 S. Ct. at 1780 (citing *Hanson v. Denckla*, 357 U. S. 235, 251 (1958)).  And the decision expressly left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id*. at 1784.  Since federal courts are not naturally subject to the "limitations on the power of the [individual] states," the federalism concerns implicated by *Bristol-Myers* do not apply to the instant action. "Federal court jurisdiction is broader based" than state court jurisdiction. *Chinese-Manufactured Drywall*, 2017 U.S. Dist. LEXIS 197612, at *45.

This point was elaborated in significant detail in *Sloan v. GM, LLC*, 16-cv-07244, 2018 U.S. Dist. LEXIS 21176, at *24 (N.D. Cal. Feb. 7, 2018).  Rejecting the notion that a "categorical extension" of *Bristol-Myers* to cases in federal court was warranted, the *Sloan* court observed that *Bristol-Myers* was **"animated by unique interstate federalism concerns."** *Id.* at 24.  This was "[t]he focus of the [Supreme] Court's analysis." *Id.* at *26.  And the decision's "preface that interstate sovereignty concerns may be 'decisive' even when a defendant faces no burden," provides the "backdrop against which *Bristol-Myers*' import must be understood." *Id*.  Seen in this light, the due process right invoked in *Bristol-Myers* does not apply to federal court because "all federal

courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government." *Id.*

## X. THE COURT CAN APPLY OTHER STATES' LAWS TO NON-NEW YORK CLASS MEMBERS

Defendant argues that Plaintiff may not plead NY GBL § 349 and NY GBL § 350 on behalf of non-New York residents because "New York has no interest in applying its law to non-resident transactions." Def. Mem., pg. 20. But even if this is so, Plaintiff may and does plead the analogous consumer protection laws of the other states on behalf of those states' residents.

Defendant considers this inappropriate, arguing that "[b]ecause Plaintiff does not assert a claim under any of these statutes, Compl. Counts I-IV, their presence in the Complaint has no bearing on the case as presently pleaded." Def. Mem., pg. 20. But Defendant ignores that this is a class action and that the Second Circuit has unequivocally upheld the right of named plaintiffs to invoke non-New York laws on behalf of Non-New York class members:

> The only point of contention is whether Langan has standing to bring a class action on behalf of unnamed, yet-to-be-identified class members from other states under those states' consumer protection laws. Because there has been considerable disagreement over this question in the district courts, we write to make explicit what we previously assumed in *In re Foodservice Inc. Pricing Litigation*, 729 F.3d 108 (2d Cir. 2013): *HN3* as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), *id.* At 126-27, not a question of "adjudicatory competence" under Article III,

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92-93 (2d Cir. 2018)

Perhaps aware of this precedent, Defendant does not frame its position as a standing argument. But it is ultimately a standing argument in disguise. For only if we assume that Plaintiff lacks class standing to represent non-New Yorkers does it follow that his invocation of other states' laws is immaterial and impertinent, as Defendant baselessly asserts. In truth, these laws will

become highly material and pertinent on Plaintiff's Rule 23 motion for class certification. Defendant worries that "these irrelevant statutes may prejudice Defendant later in this litigation (if it continues) should Plaintiff refer to them in a future filing without having had to bear the burden of sufficiently pleading them in his Complaint." Def. Mem., pg. 20. But the "future filing" in question will be the Rule 23 motion, at which point Plaintiff will bear the burden of establishing that they survive the Rule's commonality and predominance analysis. Since Defendant will have ample opportunity to respond, the inclusion of these non-New York consumer statutes in the Complaint will in no way prejudice it.

Plaintiff's position is consistent with longstanding precedent. *See Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 452 (S.D.N.Y. 2010); *In re Grand Theft Auto Video Game Consumer Litig.*, 06 MD 1739, 2006 U.S. Dist. LEXIS 78064, at *9 (S.D.N.Y. Oct. 25, 2006); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277, 2016 U.S. Dist. LEXIS 14001, at *19-21 (N.D.N.Y. Jan. 15, 2016) *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 221 (S.D.N.Y. 2016); *Kaatz v. Hyland's Inc.*, No. 16 CV 237, 2016 U.S. Dist. LEXIS 87348, at *10-11 (S.D.N.Y. July 5, 2016)

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss and motion to strike are meritless and should be denied.

Dated: January 9, 2019

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*                
By: C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on January 9, 2019, true and correct copies of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Motion to Strike were served on all counsel of record via ECF.  The formatting of this memorandum complies with the requirements stated in the individual practices of Judge John G. Koeltl.  The length of this memorandum is 6,791 words, exclusive of the cover page, certificate of compliance, table of contents, table of authorities, and attorney signature block.

*/s/ C.K. Lee*
C.K. Lee, Esq.